CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:   (415) 436-7034
    Facsimile:   (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00259-WHO |
| Plaintiff, | SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | |
| WEIDONG LIU, et al., | |
| Defendant. | |

## I. SYNOPSIS

At the hearings on September 3, 2024, all three defendants contended that the government was not entitled to a detention hearing because it had not made a showing of "a serious risk that such person [i.e., the defendant] will flee." 18 U.S.C. § 3142(f)(2)(B). In the context of Defendant Xu's case in particular, the Court requested supplemental briefing from the government whether the government's proffer of Defendant Xu's continued misconduct, after being released on bail by the court in Collin County, Texas, can be considered by this Court in assessing flight risk.

The answer to the Court's specific question is "yes" per the analysis in *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1145 (D. Idaho 2023), which has been adopted in several cases since, as discussed herein. *See* Part II below. In addition, the government uses this opportunity to

present:

- a survey to the Court of the recent opinions, including by other judges in this District and judges in sister courts in the Ninth Circuit, that elaborate on the meaning of *a serious flight risk* to entitle the government to a detention hearing and allow for the defendant's danger to be considered once that threshold is met. *See* Part III below.
- Additional, recent developments about Mr. Xu's Texas cases and additional details about his misconduct as alleged in the indictment, since being released by the Texas court. *See* Part IV below.

## II.   DISREGARD FOR COURT ORDERS AS EVIDENCE OF SERIOUS RISK OF FLIGHT

It has been the law of the Ninth Circuit for 40 years that, in deciding whether to detain a defendant pretrial due to the defendant's flight risk, "[a]lienage may be taken into account, but it is not dispositive." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985)); *Motamedi*, 767 F.2d at 1408 (holding that, under the circumstances of that case, the factor of alienage "does not tip the balance either for or against detention"). In the time since, however, how to evaluate whether a defendant who is an alien presents a *serious* risk of flight per 18 U.S.C. § 3142(f)(2)(B) has remained unresolved by the circuit court.

In *Figueroa-Alvarez*, the court addressed the question of what factors it may consider in determining whether the defendant presented a *serious* risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(B) to warrant a detention hearing. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1136. The alien defendant in that case was charged with illegal reentry after removal, in violation of 8 U.S.C. § 1326, and thus—like the alien defendants here—was not charged with a crime enumerated in § 3142(f)(1) that mandates a detention hearing upon the government's motion. *Id*. After distinguishing risk of flight from risk of non-appearance, the court analyzed four categorical factors that "relate to serious risk of flight by an alien defendant," and then delineated the types of information within each factor that it evaluated in that specific case:

(i)   incentives to flee, including weight of the evidence and potential punishment;

(ii)   ability to flee – i.e., defendant's access to resources that would enable flight;

(iii)   ties to the jurisdiction and the United States, including length of residence, family ties,

community ties, employment and income; and

(iv)   reliability and trustworthiness of the defendant, including any illegal reentry after removal, prior violations of terms of supervised release/probation/parole, prior failures to appear, and substance abuse.
</blockquote>

*See generally id.*, 681 F. Supp. 3d at 1136-45.  The court considered "these factors as part of the 'totality of the evidence.' [citation].  No one factor is dispositive." *Id*. at 1136 (quoting *Santos-Flores*, 794 F.3d at 1092).

Specific to this Court's inquiry, the court in *Figueroa-Alvarez* stated the following as to the factor of the reliability and trustworthiness of the defendant:

> prior instances of disregarding or violating court orders may be predictive of flight insofar as they demonstrate that the defendant is not reliable or trustworthy.  Critically, however, the predictive value of prior violations of court orders depends on the type of order violated and the context of the violation.

*Id*. at 1144.  Regarding context, the court further noted that:

> The type of violation matters.  Violations that are the result of premeditated, conscious choices to avoid supervision and contact with supervising authorities are most predictive of flight.  Violations that can be explained by negligence or untreated addiction to controlled substances are less so.

*Id*. at 1145.  Regarding the context of the violation, in that case, the Court noted that the defendants' "four illegal reentries after removals demonstrate his disrespect for the law," but were juxtaposed with those actions demonstrating a desire to stay in the United States and further counterbalanced by other history of appearances in other court cases. *Id*. at 1148.

Other courts have adopted the factors in *Figueroa-Alvarez* to determine whether a detention hearing is warranted based on a demonstration of a serious flight risk, including the defendant's past history on pretrial release.  *See, e.g.*, *United States v. Erazo-Calix*, No. CR 24-150-AKB, 2024 WL 4505038, at *4 (D. Idaho Oct. 16, 2024) (finding a serious risk of flight based on the *Figueroa-Alvarez* factors, including that "multiple instances of disregarding the law and violating court orders demonstrate Erazo-Calix is unreliable and untrustworthy and are predictive of a serious risk of flight."); *United States v. Hernandez-Us*, No. CR 25-45, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025) ("reliability and

U.S. SUPPL. MEMO ISO PRETRIAL DETENTION         3
3:25-CR-00259-WHO

trustworthiness include whether he . . . has previously violated court-ordered conditions").

### III. CASES REQUIRING A LOW THRESHOLD FOR SERIOUS RISK OF FLIGHT AND CONSIDERING DEFENDANT'S DANGER ONCE THAT THRESHOLD IS MET

While the opinion in *Figueroa-Alvarez* provides a multi-factor approach to determine whether there is a serious risk of flight, not all courts have demanded such rigor: "Because of the immediacy with which the hearing should happen, the government or Court need only express their belief that the defendant poses a serious risk of flight for the hearing to commence." *United States v. White*, No. CR 18-25, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018) (Westmore, J.) (following *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004)). More recently, yet another court in this district acknowledged that low threshold in holding:

> Here, the government did more than express its belief, and it did not overplay the issues about possible flight risk: . . . [it provided] a fuller description of erratic and concerning behavior in this and other districts . . . that gave rise to a substantial concern about volatility, amenability to supervision, and a resulting concern about a serious risk of flight. That gets the government its detention hearing under 18 U.S.C. § 3142(f)(2) based on a serious risk of flight. The court's view — also expressed in some of the Tenderloin fentanyl cases — is that the inquiry into whether a defendant poses a serious risk of flight cannot be divorced from the context of the defendant's behavior

*United States v. Nguyen*, No. 24-MJ-71474-MAG-1 (LB), 2024 WL 4584574, at *7 (N.D. Cal. Oct. 25, 2024) (Beeler, J.).

The government also notes that, while there is a split in authority, courts in Ninth Circuit have held that "once a detention hearing is authorized, courts must evaluate both the defendant's risk of nonappearance *and* risk of danger to the community regardless of whether the detention hearing was triggered by (f)(1) or (f)(2). *United States v. Spirea*, No. CR 24-383-2-AN, 2024 WL 4903759, at *8 (D. Or. Nov. 27, 2024) (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139 n.5; *United States v. Subil*, No. CR 23-30-TL, 2023 WL 3866709, at *5 (W.D. Wash. June 7, 2023)); *accord United States v. Holmes*, 438 F. Supp. 2d 1340, 1351 (S.D. Fla. 2005); *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 591-92 (E.D. Ky. 2023).

### IV. DEFENDANT XU'S TEXAS CASE AND HIS MISCONDUCT SINCE

Since the Court's hearing of Mr. Xu's case on September 3, 2025, there have been two

significant developments in Mr. Xu's Texas cases that might impact this Court's view of Mr. Xu's flight risk:

1. The 219th District Court in Collin County, Texas, issued the bond revocation orders on September 5, 2025, for Mr. Xu's two pending cases (nos. 219-04176-2025; 219-04177-2025). The revocation reflects Mr. Xu's continued misconduct discussed below. Extradition to that jurisdiction would necessarily follow any release by this Court.
2. Per the Collin County District Attorney's Office, a grand jury indicted Mr. Xu on September 5, 2025, on the state jail felony charge of Trademark Counterfeiting greater than $2,500 and less than $30,000, in violation of Texas Penal Code § 32.23, which has a maximum prison term of two years.

Regarding Mr. Xu's misconduct after he was released on bond on July 13, 2025 by the Texas court, the government's prior briefing noted that the victim, a major retailer, had informed investigating agents that Mr. Xu had returned counterfeit products the week of August 11, 2025. And, when Mr. Xu was arrested on August 28, agents found him in possession of counterfeit products. The government further elaborates on that latter fact, per an investigating agency report that is still being finalized: during the execution of the search warrant at Mr. Xu's residence on August 28, agents seized approximately 50 counterfeit Apple Pencils —a stylus for use with iPads that sells for $80 or $130 retail depending on the model—and 10 counterfeit Apple iPhones. Agents also seized 28 sets of legitimate Apple AirPods Pros headphones—their serial numbers will be run against databases to determine whether counterfeits were returns already with those serial numbers consistent with the return fraud scheme alleged in the Indictment.

These additional facts demonstrate that Mr. Xu did not engage in trivial offenses while released by the Texas court. Instead, he continued to engage in the scheme alleged in the Indictment, undeterred by being in jail for a month and being released subject to desisting in unlawful conduct.

DATED: September 5, 2025                          Respectfully submitted,

                                                  CRAIG H. MISSAKIAN
                                                  United States Attorney
                                                         /s/
                                                  DANIEL N. KASSABIAN
                                                  Assistant United States Attorney